DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and )<br>PEOPLE OF THE VIRGIN ISLANDS, )<br>)<br>)<br>v.         )<br>)<br>)<br>SECORI ELMES,         )<br>)<br>Defendant.    )<br>_____) | Criminal No. 2012-005 |

**Attorneys:**
**Allan F. John-Baptiste, Esq.,**
St. Croix, U.S.V.I.
   *For the United States and Virgin Islands*

**Patricia Schrader-Cooke, Esq.,**
St. Croix, U.S.V.I.
   *For the Defendant*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER is before the Court on Defendant's Motion to Suppress (Dkt. No. 28), which the Government opposes. (Dkt. No. 30). For the reasons discussed below, the Court will deny Defendant's Motion.

### I.   BACKGROUND

On February 21, 2012, Defendant Secori Elmes ("Defendant") was indicted on two counts: (1) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); and (2) unauthorized possession of a firearm, in violation of 14 V.I.C. § 2253(a). (Dkt. No. 1). Defendant pleaded not guilty to the charges.

On June 12, 2012, Defendant filed the instant motion seeking to suppress all evidence seized during a January 18, 2012 encounter with Virgin Islands Police Department ("VIPD") officers on the grounds that the officers lacked the legal justification to detain and search him. (Dkt. No. 28 at 1). In its opposition to the motion, the Government asserts that the officers had the reasonable suspicion necessary to stop and search Defendant. (Dkt. No. 30 at 4-5). A suppression hearing was held on August 21, 2012, at which VIPD Officer Orlando Benitez, Jr., Mr. Cedric Miller, Mr. James Petrus, and Defendant Elmes testified. The following facts emerge from the record established at the hearing. (Dkt. No. 43).[1]

Officer Benitez and his partners—Officers Huertas, Lockhart, and Benjamin—were on patrol in Christiansted, St. Croix, on the night of January 18, 2012. (*Id.* at 8). Shortly before midnight, the officers observed three individuals congregating in the vicinity of No. 9 Prince Street on a stairway across from the Holy Cross Church—an area where illegal drug activities are frequently conducted. (*Id.* at 8-10).[2] Apart from these three individuals (subsequently identified as Defendant, Mr. Miller, and Mr. Petrus) and the four officers, no one else was present or nearby. (*Id.* at 47).[3]

---

[1] The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

[2] Officer Benitez testified that he personally responds to approximately seven or eight incidents of such drug activity per month in that location. (Dkt. No. 43 at 22-23).

[3] According to the testimony presented, there are houses, an empty lot and/or open area, and an abandoned building in the vicinity of No. 9 Prince Street. (Dkt. No. 43 at 22; 128-29). Although the exact locations were not identified, there is also a grocery store and nightclubs in the "area." (*Id.* at 9; 131).

The officers smelled a "strong odor of marijuana coming from where the three individuals were gathered." (*Id.* at 24; 8).[4] Thereafter, the officers approached the three individuals and inquired about the marijuana odor in the air. The individuals responded that they were smoking a marijuana joint. (*Id.* at 25). Officer Benitez asked if any of the individuals had anything else on them, to which Defendant responded, "I have something on me," but did not identify what it was. (*Id.* 43 at 25). Officer Benitez believed Defendant's response to mean that he was in possession of more drugs or a firearm. (*Id.* at 25-26).

The officers instructed the individuals to move against the wall, and patdown searches were conducted. As Officer Benitez was patting-down the exterior of Defendant's clothing, he felt a small pouch in Defendant's right front pocket. Defendant identified the pouch, stating that "[i]t's a dime bag." Officer Benitez removed the pouch and observed that it contained a green leafy substance. (*Id.* at 26). After removing the pouch, Officer Benitez continued the patdown and felt an object in Defendant's left waist which he believed to be a gun. (*Id.* at 27). Officer Benitez shouted "Gun" to alert his fellow officers, at which point Defendant was detained and the firearm in his waist was removed. (*Id.* at 27). The officers subsequently examined the area and located a partially lit marijuana cigarette within three to four feet of Defendant. (*Id.* at 27; 48).

The witnesses presented by the Defense (Mr. Miller, Mr. Petrus, and Defendant Elmes) offered a different account of some of the events which transpired on January 18, 2012. Viewing the testimony as a whole, the witnesses testified that they were approached by the officers, who

---

[4] Officer Benitez, a VIPD veteran with over seven years of experience, testified that he was able to identify the odor based on his police training, his detail with the Street Enforcement Team which focuses on drug and firearm offenses, and his personal experience of observing others smoking marijuana. (Dkt. No. 43 at 7; 24).

examined the area with a flashlight, and then proceeded to walk away. (*Id.* at 125). After walking about ten feet, the officers turned around, indicated that they smelled marijuana, and instructed the individuals to move up against the wall. (*Id.* at 127-28). The individuals denied being asked by the officers whether they were smoking marijuana, and testified at the suppression hearing that they were not smoking marijuana. (*Id.* at 128). Consistent with Officer Benitez's testimony, Defendant testified that when Officer Benitez asked whether the individuals had anything on them, Defendant stated that he had something on him. (*Id.* at 140-41).[5]

## II.   DISCUSSION

Defendant argues that the officers lacked the reasonable suspicion necessary to justify the investigative *Terry* stop which was conducted; thus, the fruits of this illegal stop—namely, the firearm—must be suppressed. The Government contends that the stop was properly supported by reasonable suspicion, and that suppression of the evidence seized is therefore unwarranted. As discussed below, the Court agrees with the Government's contention.

### 1. Applicable Legal Principles

The Fourth Amendment protects individuals from "unreasonable searches and seizures," U.S. Const. amend. IV, and "searches without a warrant are presumptively unreasonable." *United States v. Mathurin*, 561 F.3d 170, 173 (3d Cir. 2009). Any evidence obtained as a result of an unconstitutional seizure "must be suppressed as 'fruit of the poisonous tree.'" *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)). "However, under the exception to the warrant requirement established in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court has held that 'police can stop and briefly detain a

---

[5] At the suppression hearing, Defendant further acknowledged that the "something on me" comment was referring to the firearm. (Dkt. No. 43 at 141).

person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'" *Mathurin* at 173-74 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Such brief investigative stops are "seizures" subject to Fourth Amendment protection. *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (citing *Terry*, 392 U.S. at 21).

Reasonable suspicion "is a less demanding standard than probable cause[.]" *Alabama v. White,* 496 U.S. 325, 330 (1990). Because "probable cause means 'a fair probability that contraband or evidence of a crime will be found,' the level of suspicion necessary to justify a *Terry* stop is somewhat lower and can be established with information that is different in quantity or content than that required for probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (quoting *White*, 496 U.S. at 330, and citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). The police officer must, however, demonstrate that the stop was based on something more than an "'inchoate and unparticularized suspicion or hunch.'" *Sokolow,* 490 U.S. at 7 (quoting *Terry,* 392 U.S. at 27). An officer, therefore, "may only effectuate a *Terry* stop where 'specific and articulable facts, together with all their rational inferences, suggest that the suspect was involved in criminal activity.'" *Ramos*, 443 F.3d at 308 (quoting *United States v. Robertson,* 305 F.3d 164, 168 (3d Cir. 2002)). In evaluating reasonable suspicion, courts "must consider 'the totality of the circumstances—the whole picture.'" *Sokolow*, 490 U.S. at 8 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

> The constitutionality of a *Terry* stop involves a two-part assessment:
>
> First, we examine "whether the officer's action was justified at its inception"—that is, whether the stop was supported by reasonable suspicion at the outset. . . . Next, we determine whether the manner in which the stop was conducted "was reasonably related in scope to the circumstances which justified the interference in the first place."

*United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010) (quoting *Terry*, 392 U.S. at 19-20).

With regard to patdowns, the United States Court of Appeals for the Third Circuit recently reiterated that the realities of law enforcement allow police officers to briefly detain an individual based upon articulable suspicion and then to perform a limited protective patdown for weapons if the officer has reasonable grounds to believe that a person is armed and dangerous. *United States v. Navedo*, No. 11-3413, 2012 U.S. App. LEXIS 19121, *8-9 (3d Cir. Sept. 12, 2012) (quoting *Terry*, 392 U.S. at 30). This protective search or patdown "must be a 'carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him [or her].'" *Id.* (quoting *Terry* at 30).

2. **Analysis**

In the instant case, the parties disagree over whether the stop was supported by reasonable suspicion at its outset, (Dkt. No. 28 at 1; Dkt. No. 30 at 4-5), which implicates the first step in the Court's *Terry* stop analysis. *Johnson*, 592 at 452. The Court finds that the officers had reasonable suspicion to initiate the stop at issue because the "'specific and articulable facts, together with all their rational inferences, suggest that the suspect[s] [were] involved in criminal activity.'" *Ramos*, 443 F.3d at 308 (quoting *Robertson,* 305 F.3d at 168).

Here, the officers encountered Defendant in an area in which illegal drug activity frequently occurs, as reported by Officer Benitez who testified that he personally responds to approximately seven or eight incidents per month involving drugs at that location. (Dkt. No. 43 at 22-23). As this Court recently noted, "[w]hile an individual's presence in an 'area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime,' a location's characteristics are relevant in 'determining

whether the circumstances are sufficiently suspicious to warrant further investigation.'" *United States v. Lima*, No. 2012-010, 2012 U.S. Dist. LEXIS 137001, *12-13 (D.V.I. Sept. 25, 2012) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

Apart from frequency of drug activity in the area, the officers smelled a strong odor of marijuana "coming from" the location of Defendant and the other two individuals. (Dkt. No. 43 at 24; 8). Accordingly, the officers approached the individuals to investigate. Again, this Court's reasoning in *Lima* is equally applicable to this case:

> Having smelled a strong odor of marijuana emanating from the place where the three men were standing, it was reasonable for [the investigating officers] to suspect criminal activity. The source of the odor was sufficiently particularized to the three men. In such a circumstance, under *Terry* and its progeny, the officers had reasonable suspicion and were entitled to investigate further.

*Lima*, 2012 U.S. Dist. LEXIS 137001 at *13 (citations and internal quotations omitted).

Further, the individuals' responses to initial questioning by the officers provided additional grounds to believe that criminal conduct was afoot. Specifically, when the officers inquired as to the odor of marijuana, the individuals indicated that they had been smoking a marijuana joint. (Dkt. No. 43 at 25). When Officer Benitez asked if they had anything else on them, Defendant responded that he did, which the officer believed to mean that Defendant had additional drugs or a firearm on his person. (*Id.* at 25-26). Such statements provided additional grounds to support a finding of reasonable suspicion by the officers, so as to justify detaining the individuals and conducting patdowns. *See Navedo*, 2012 U.S. App. LEXIS 19121 at *8-9 (noting that patdowns—limited protective searches for weapons—are justified when the officer has reasonable grounds to believe that a person is armed and dangerous).

In view of the foregoing, the Court finds that the *Terry* stop was justified at its outset by reasonable suspicion. Although the parties did not specifically address this issue, the Court also

finds that "the manner in which the stop was conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Johnson*, 592 F.3d at 452 (quoting *Terry*, 392 U.S. at 19-20). The officers properly responded by investigating a strong odor of marijuana, and upon Defendant's indication that he had something else on him, briefly detained the individuals and conducted patdowns. The evidence obtained was not the fruit of a constitutionally unreasonable search; rather, it was the product of appropriate police conduct.

Even if the Court were to credit the account of the events to which Defendant and his witnesses testified, this would not alter the Court's conclusion that the *Terry* stop was justified. The Defense's version of the facts differs from the Government's version in two principal respects. First, Defendant claims that the officers did not indicate that they smelled marijuana until after walking approximately ten feet beyond the three individuals. (Dkt. No. 43 at 125). Even if true, however, this would not discredit Officer Benitez's unequivocal testimony regarding a strong odor of marijuana coming from the area of the three individuals.[6] Moreover, while counsel for Defendant argued that the odor could have originated from one of the nearby buildings or an open area near No. 9 Prince Street, (*id.* at 146), no evidence was presented contradicting Officer Benitez's testimony that no other individuals were present in the area.

Second, the Defense claims that the officers did not ask if the individuals were smoking marijuana, and that they were not, in fact, smoking. (*Id.* at 128). Even absent a question from the officers and any admission that the individuals had been smoking, the officers nonetheless had reasonable suspicion that criminal conduct was afoot based on the particularized odor of

---

[6] Although not relevant for purposes of establishing reasonable suspicion, it is worthy of note that the officers later located a partially lit marijuana cigarette in Defendant's immediate vicinity.

marijuana and Defendant's location in a high crime area. *Lima*, 2012 U.S. Dist. LEXIS 137001 at *12-13. Thus, the Court's conclusion remains unchanged.

In sum, the Court concludes that the Government has carried its burden of demonstrating that the investigative stop conducted by the police and the evidence seized in connection therewith pass muster under the Constitution.

### III.  CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress. (Dkt. No. 28) is denied. An appropriate Order accompanies this Memorandum Opinion.

Date: October 12, 2012             _____/s/_____
                                   WILMA A. LEWIS
                                   District Judge